UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:13CR00001 |
| | ) | |
| THOMAS EARL FAULLS, SR. | ) | |

UNITED STATES' MEMORANDUM IN SUPPORT OF SENTENCING

COMES NOW the United States of America, by and through Timothy J. Heaphy, United States Attorney for the Western District of Virginia, and Nancy S. Healey, Assistant U.S. Attorney for that district and respectfully submits the following in support of sentencing.

Summary of facts

As this Court has already had multiple occasions and filings to learn about many facts relevant to determining a reasonable sentence under 18 U.S.C. § 3553, the undersigned will endeavor to be brief.

The defendant, Thomas Ethan Faulls, had been married to the victim for 20 years, but in a relationship with the victim for several years longer. As the evidence at trial and filings conclusively showed, the marriage was full of strife, and more significantly, pervasive and insidious mental and physical[1] abuse. Mrs. Faulls

---
[1] The physical abuse was less frequent than the emotional abuse.

finally gathered the courage to leave a highly dysfunctional and volatile marriage when the defendant told her she had better leave or else he would strike her.

It is indisputable that Mrs. Faulls had a right to end her relationship with the defendant. It is indisputable that she had a right to live without being continually harassed and perpetually in fear of what the defendant would do to her. Nevertheless, her decision to leave – far from providing more security for Mrs. Faulls – resulted in escalating violence and threats to her wellbeing, as well as the security of at least one of her children.

As this Court has learned, the defendant engaged in threatening and assaultive behavior prior to the crimes for which he was readily convicted at trial, including incidents about which evidence was elicited pursuant to Fed.R.Evid. 404(b). The incidents included a display of a firearm, a claim of possession of a firearm, the defendant tailing and striking Mrs. Faulls' vehicle, and a threat or suggestion that the defendant would kill Mrs. Faulls.

As to the crimes charged in this case, the defendant's actions were clearly premeditated and not the result of a spontaneous decision:

- the defendant lured Mrs. Faulls to the home under false premises, i.e., a fraudulent request for alleged assistance to pick up from servicing the truck that was used to commit the offenses. The truck was actually behind the house and already packed with the defendant's bags and camping gear;

- the defendant had disabled the front passenger door and window thus making impossible any attempt to escape through that door

- the defendant threatened to bind the victim (he showed her zip ties that were previously fashioned into restraints);

- the defendant brought with him several thousand dollars (and stated that they would go to until the money ran out); and

- the defendant decided to bring a shotgun.

The evidence at trial established that Mrs. Faulls was transported by the defendant against her will from the Western District of Virginia to West Virginia. They stayed at a hotel the first night in West Virginia and in the morning, while Mrs. Faulls remained kidnaped and afraid of her husband, the defendant wanted to and decided to engage in sexual intercourse with Mrs. Faulls without regard to her wishes to avoid sexual contact with her estranged husband. Shortly after the initial abduction, the defendant rebuffed attempts by his own daughter to find out where her mother was and caused significant distress to the Faulls' children.

The evidence further established that given the many years she spent as a victim of domestic abuse, Mrs. Faulls knew she would only have one chance to get away from her husband and thus endeavored to develop a plan to safely escape. Her plan to get the defendant drunk was thankfully successful and resulted in a small window of opportunity when, after spending time at a restaurant bar, the defendant fell behind her because he was drunk as they walked in the neighboring area.

3

Thanks to the acts of two good Samaritans, Mrs. Faulls was driven away from the immediate area. The Court will recall her urgent plea to the 911 operator to send the police quickly.

*Post-arrest conduct*

The defendant made numerous attempts to get his mother, via jail calls, to convince the victim to lie about his crimes and to drop the charges. The United States set forth the relevant excerpts of the calls in a submission to the U.S. Probation Office (USPO) in support of an obstruction enhancement which the USPO readily agreed was appropriate. The United States is in further possession of recordings of phone messages left by the defendant's mother on Mrs. Faulls' voice mail. In numerous messages, the defendant's mother tries to convince her that the defendant will never bother Mrs. Faulls again and suggests that she take back what she reported and drop the charges.

The Court will also recall there were other very disturbing statements the defendant made in some of his jail calls, including the following:

- "…This is, this is heaven in here compared to what I went through out there for the last twenty some years. Had to go on vacations with her family every fucking year and shit. Fuck that. What the fuck was I thinking doing that? *I shoulda' fucking killed her a long time ago.*"

- "I was trying to go somewhere where they, nobody would look, couldn't…"

- "*I terrorized her the, on the Saturday before this happened* because, that was

4

the only time I terrorized her.2   Because [my daughter] was being a bitch and trying to call the cops on me and I grabbed the, I, I threw [my daughter] down on the bed and, took my phone that I pay for off of her.   Because she tried to call the cops on me with a phone I pay for … That's the only thing that happened.   I took a phone off of her … and *I wouldn't let her leave the house* until I left because I was afraid she was gonna go call the cops somewhere else.   I didn't try to abduct anybody or kidnap anybody.   All's I did was make her stay in the house so she couldn't call the cops on me..."

- "…I guess I terrified the hell out of her.   Probably did … *I don't know why she couldn't do what I asked her to at the beginning and move out of [my daughter's] house so I wouldn't know where she was*.   That way I couldn't have bothered her … Then *I kept telling her, I said, you don't live far enough away.   I could still come to your house*.   You need to move outta there or something…"

The jury had no trouble finding that the defendant was guilty, beyond reasonable doubt – not only of the base offenses, but also of each of the aggravating factors, i.e., aggravated sexual abuse and use of a dangerous weapon.

The Presentence Report (PSR)

The United States Probation Office properly calculated the defendant's total offense level, which accounts for his offenses during the charged crime and obstructive behavior, and also his criminal history category; thus, the advisory guideline range for Counts One and Two is 292-365 months.   Count Three carries a mandatory consecutive five year sentence.   PSR ¶55.

As noted in the PSR, Counts One and Two each carry a statutory sentence of

---

2  This reference was to an incident that was introduced at trial under Fed.R.Evid. 404(b).

up to life imprisonment,3 and Count three carries a statutory sentence of between 5 years and life imprisonment to be served concurrently to the other charges. PSR ¶54.

When analyzing this case under the factors set forth in 18 U.S.C. §3553, it is clear that a guidelines sentence is reasonable and appropriate.

I.  Nature and Circumstances of the Offense and Defendant's History and Characteristics

Section 3553(a)(1) of Title 18 directs the Court to consider, when determining the sentence, the nature and circumstances of the offense and the history and characteristics of defendant. These factors warrant a substantial sentence in this case. With regard to the nature and circumstances of the charged offenses, Mrs. Faulls' nightmare began on the night of August 22, 2012, when she thought she was going to the defendant's home to help him. When she arrived, the defendant and Mrs. Faulls went for a short drive during which time Lori thought her estranged husband called and learned that the truck really wasn't available to be retrieved at that time. A short time later, the defendant told her she was stupid and revealed that the truck was at the house and that he was going to take her away in that truck regardless of whether she agreed to go along with him.

---

3 Interstate domestic violence, as charged in Count Two of the Indictment, carries various potential punishments depending on various aggravating factors. Because the jury found that the defendant was guilty beyond a reasonable doubt of aggravated sexual abuse, this crime is punishable by up to life because 18 U.S.C. § 2261(b)(4) specifies that the sentence shall be "as provided for the applicable conduct under Chapter 109A…" The offense of aggravated sexual abuse, a Chapter 109A crime, carries a sentence of up to life imprisonment. *See* 18 U.S.C. 2241(a).

The defendant took and discarded Mrs. Faulls' phone, thereby cutting her off from communicating with family or friends, and he shortly thereafter threw his own phone out of the window after a brief call with their daughter who had called to inquire about her mom. And during their hotel stay in West Virginia, while the victim remained the defendant's hostage, the defendant unilaterally decided he would have sex with Lori, and he removed her tampon and proceeded to penetrate her vagina with his penis. As found by the jury, the defendant had raped his wife. She was successfully able to flee from the defendant the later that day.

As set forth above, despite having been apprehended, the defendant repeatedly made efforts designed to convince his wife to recant. Notably, he made a comment to his mother that he should have killed his wife long before.

Regarding the defendant's prior history, while he has only one criminal history point, it is clear that he has had multiple contacts with the criminal justice system. More importantly, however, his longstanding abuse of his wife reveals that he is a dangerous offender. Additionally, the defendant appears to be a drug abuser, as indicated by his statements to the bar patrons about keeping the battery of his cell phone to make methamphetamine and statements about how to make methamphetamine.

In light of the above, the nature of the offense and the defendant's history all

point to a Guidelines sentence as a reasonable sentence.

> II. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>

The jury convicted the defendant of kidnapping, interstate domestic violence, and possessing a firearm in furtherance of a crime of violence. All of these are serious offenses. During the time that Mrs. Faulls was the defendant's hostage, she was cut off from her family, did not have access to a phone, and was justifiably in fear for her life.

Just a few months earlier this year, the Supreme Court, in upholding a firearms conviction under 18 U.S.C. §922(g)(9), stated:

> This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year. Domestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide…

*United States v. Castleman*, 134 S.Ct. 1405 (2014) (citations omitted). Some of the statistics relating to domestic violence according to the website domesticviolencestatistics.org are as follows:

- Every 9 seconds in the US a woman is assaulted or beaten.
- Around the world, at least one in every three women has been beaten, coerced into sex or otherwise abused during her lifetime. Most often, the abuser is a member of her own family.
- Domestic violence is the leading cause of injury to women—more than car accidents, muggings, and rapes combined.
- Everyday in the US, more than three women are murdered by their husbands

- or boyfriends.
- Ninety-two percent of women surveyed listed reducing domestic violence and sexual assault as their top concern.
- Domestic violence victims lose nearly 8 million days of paid work per year in the US alone—the equivalent of 32,000 full-time jobs.
- Based on reports from 10 countries, between 55 percent and 95 percent of women who had been physically abused by their partners had never contacted non-governmental organizations, shelters, or the police for help.
- The costs of intimate partner violence in the US alone exceed $5.8 billion per year: $4.1 billion are for direct medical and health care services, while productivity losses account for nearly $1.8 billion.

*See* http://domesticviolencestatistics.org/domestic-violence-statistics/. And, during a Domestic Violence Homicide Prevention Initiative announcement in Rockville, Maryland, on 13, 2013, Attorney General Eric Holder Speaks noted:

> The same week that Congress voted to reauthorize the Violence Against Women Act, at least 15 women and 4 men were killed by intimate partners. The day the vote took place, one woman was beaten to death with a baseball bat by her boyfriend. Another was shot by her husband as she left a movie theater. And yet another woman – who was five months pregnant – was also murdered by her boyfriend, who drove her body to a wooded area and burned it – all with her two young children in the car.
>
> On average, three women are murdered every day in this country by a boyfriend, husband, or ex-husband. Experts estimate that, for every victim of domestic violence who is killed, an additional nine nearly lose their lives. And many others – including children, coworkers, neighbors, and police officers – are injured or killed while trying to stop violent acts, or simply because they're in the wrong place at the wrong time.

*See* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130313.html. It is clear that domestic violence and abuse are not only serious, but also, alarming and dangerous crimes, and the defendant should be sentenced in accordance with the

Sentencing Guidelines to promote respect for the law and to provide just punishment.

>   III. <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant</u>

As this Court has learned, the defendant's abusive conduct was not only extensive, but escalated over time (which is consistent with the Supreme Court's findings), and stopped only when he was arrested.

The two prior incidents revealed to the jury as 404(b) evidence involved the presence or threat of the presence of a gun. The first culminated in the defendant hitting Mrs. Faulls' car with his car. The second, which occurred less than a week prior to the instant offenses, involved, in part, an abduction in Williamsburg (pending state charges) during which he held his wife and daughter hostage and assaulted both of them.

Additionally, the defendant's recorded jail conversations not only include a statement that he should have killed his wife prior but also make clear that he was unable to control his behavior since he stated that his wife should have moved somewhere where he could not have located her. As demonstrated to the jury, the defendant could not accept his wife's rightful decision to leave him. His actions make clear that he will continue to pose a danger to her. A Guidelines sentence is

thus a reasonable sentence that would serve the goals of deterrence and protection of the public. Such a sentence would also send a message to other domestic abusers that the Court takes kidnapping and domestic violence cases seriously.

    IV.    <u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants with similar Records who have been Found Guilty of Similar Conduct</u>

Domestic violence is usually prosecuted in state courts. The United States has contacted the overall Violence Against Women Coordinator for the U.S. Department of Justice in an effort to get sentencing information in similar federal cases and will present relevant information to the Court during the hearing.

    V.    <u>The Need to Provide Restitution to Any Victims of the Offense</u>

In her Victim Impact Statement, Mrs. Faulls itemized a few "expenses and damages" that arose from the defendant's conduct and that will be presented to the Court for an appropriate restitution order.4

    Respectfully submitted,

    TIMOTHY J. HEAPHY
    United States Attorney

    _____
    Nancy S. Healey
    Assistant United States Attorney
    Virginia Bar No. 39447
    nancy.healey@usdoj.gov

---

4 The United States will not seek restitution for the first listed lost property because that loss cannot be associated with the offenses of conviction.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's CM/ECF System this day, July 15, 2014, which provides electronic notice to all parties.

s/Nancy S. Healey<br>
Nancy S. Healey