**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 14-4595**

―――――――――――

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

THOMAS EARL FAULLS, SR.,

              Defendant - Appellant.

―――――――――――

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville.  Glen E. Conrad, Chief
District Judge.  (3:13-cr-00001-GEC-1)

―――――――――――

Argued:  October 28, 2015              Decided:  May 5, 2016

―――――――――――

Before SHEDD, DIAZ, and HARRIS, Circuit Judges.

―――――――――――

Affirmed by published opinion.  Judge Diaz wrote the opinion, in
which Judge Shedd and Judge Harris joined.  Judge Shedd wrote a
separate concurring opinion.

―――――――――――

**ARGUED:** Timothy Anderson, ANDERSON & ASSOCIATES, PC, Virginia
Beach, Virginia, for Appellant.  Nancy Spodick Healey, OFFICE OF
THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for
Appellee.  **ON BRIEF:** Anthony P. Giorno, United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for
Appellee.

―――――――――――

DIAZ, Circuit Judge:

Thomas Faulls was convicted of kidnapping in violation of 18 U.S.C. § 1201(a)(1), interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2) and (b)(4), and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). The district court sentenced Faulls to 295 months' imprisonment and also required him to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16911 et seq.

On appeal, Faulls contends that his counsel was ineffective in opening the door to testimony by a government expert, and in failing to object to the district court's decision to keep the jury late one evening. He also contends that the district court erred in admitting prior acts evidence and in requiring him to register as a sex-offender. For the reasons that follow, we affirm.

I.

We recite the relevant evidence in the light most favorable to the government. United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998).

Thomas and Lori Faulls were married for about twenty-five years; they had two children. Their marriage was volatile, and they separated in June 2012.

Following their separation, the couple's interactions were marked by a series of violent episodes, three of which are relevant here. On June 28, 2012, Lori returned to the marital home in Mineral, Virginia, to gather some of her belongings (the "Mineral incident"). There, Faulls confronted her about the separation and expressed frustration that their children never answered his calls. He approached Lori with a gun and laughed when she asked if he was going to kill her. When Lori told Faulls that she was staying with a friend, Faulls called the friend to say that she ruined his marriage by allowing Lori to stay with her and that it would be her fault if Lori died. Faulls then began yelling at Lori, telling her that the marital home was her home and demanding to know why she was leaving. Instead of leaving immediately, Lori stayed with Faulls to calm him down. When she did leave, Faulls followed her and, at some point, hit her car with his truck.[1]

---

[1] Lori told police that she wasn't sure if it was an accident or if Faulls acted intentionally because she "was scared to death." J.A. 198–99.

Shortly after this incident, Lori moved to Williamsburg, Virginia, to live with her daughter Britnee. In mid-August 2012, Faulls came to Britnee's apartment and confronted her for not answering his calls (the "Williamsburg incident"). When Britnee tried to call 911, Faulls attacked the women and took their cell phones and car keys. Faulls allowed Britnee to leave, but he repeatedly demanded that Lori return home. Eventually, Lori was able to convince Faulls to leave the apartment.[2]

The third incident resulted in Faulls's convictions. On August 22, 2012, Lori drove Faulls to a repair shop, purportedly to pick up his truck. In fact, the truck was parked behind the marital home. On the way, Faulls pretended to call the shop to see if his truck was ready, but he actually called one of the couple's children, knowing that no one would answer. Faulls told Lori that the truck was not ready and they returned to the house, where Lori declined his invitation to come inside. Faulls became angry and revealed that his truck had been parked behind the house the whole time. He took Lori's cell phone and car keys, then showed her a pair of zip ties that had been fashioned into handcuffs. He asked Lori whether she "wanted to do this the easy way or the hard way." J.A. 215. Faulls then

---

[2] Lori did not report this incident to the police.

ordered her into the truck, where Lori saw his shotgun in the backseat.  Faulls locked the passenger door, and before driving away, threw Lori's cell phone out the window.  That night, Faulls and Lori stayed at a hotel in Elkins, West Virginia, nearly 200 miles from Mineral.

The next morning, Faulls sought to have sex with Lori. Lori told him that she was uncomfortable but eventually acquiesced out of fear.  That day, Faulls and Lori went to several stores, where Lori bought clothes and hygiene products. They also stopped at a liquor store and purchased a bottle of vodka.

That evening, Faulls and Lori went to a restaurant and bar. Faulls got drunk and told patrons sitting nearby that Lori was his wife and that he had kidnapped her.  The pair left shortly thereafter and, after discovering that there were no rooms available at a nearby hotel, began walking back toward the truck.  At that point, Lori fled.  She saw two women getting into a car and asked them to take her to the police.  The women drove her to the sheriff's office, where Lori reported what had happened to her.

B.

Prior to trial, the district court preliminarily denied the government's motion to allow a domestic violence expert to testify in the government's case-in-chief, stating that

admission would depend on the scope of defense counsel's examination of the witnesses. At trial, the government called the bartender at the restaurant where Faulls and Lori stopped for the evening. On cross-examination, Faulls's counsel asked the bartender whether Lori was free to leave and whether he believed Lori was being held against her will. The bartender answered that Lori was free to leave and that, from what he observed, she was not being held against her will. Although Faulls's counsel insisted that he merely asked the questions to help the jury understand how close Lori was to the bar's exit, the court concluded that counsel had opened the door to the government's expert because the issue of whether Lori could have fled had "both a physical and a psychological component." J.A. 392.

The expert's testimony focused on her research regarding intimate partner violence, risk factors involved with this type of violence, and the psychological components of abuse. She did not testify that Lori had been a victim of domestic violence, and the court addressed the jury before the testimony to emphasize that the expert had never interviewed or examined Lori.

The district court also allowed the government to introduce evidence of the Mineral and Williamsburg incidents under Federal Rule of Evidence 404(b). The court twice gave the jury a

limiting instruction regarding this evidence, stating that it could be considered only to prove "the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in connection with" Faulls's charges, but not as evidence of Faulls's character or propensity to commit the offenses. J.A. 200, 402.

At the end of the first day of trial, weather reports forecast a snowstorm that threatened a delay in the proceedings. The lawyers did not want Lori to testify over two days, so the court asked the jurors if they would be willing to stay late to complete her testimony. Faulls's counsel did not object, and though at least one juror did not want to stay late, the court chose to complete the testimony that evening. The court adjourned at 7:40 PM.

The jury convicted Faulls of kidnapping, interstate domestic violence, and possessing a firearm in furtherance of a crime of violence. The jury also determined that Faulls committed aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(2), which served as the predicate crime of violence for the interstate domestic violence charge and also enhanced Faulls's sentencing range. The district court further enhanced Faulls's sentencing range after it determined that Faulls obstructed justice when he called his mother from jail and asked her to convince Lori not to testify.

## II.

### A.

We first consider Faulls's argument that he was denied effective assistance of counsel, an issue we review de novo. United States v. Hall, 551 F.3d 257, 266 (4th Cir. 2009). Faulls contends that his counsel was ineffective during his cross-examination of the bartender, thereby opening the door to allow the government to call its domestic violence expert. Faulls also contends that his counsel was ineffective when he failed to object to the court's decision to keep the jury late to complete Lori's testimony.

We decline to reach Faulls's claim. Unless an attorney's ineffectiveness conclusively appears on the face of the record, such claims are not addressed on direct appeal. United States v. Benton, 523 F.3d 424, 435 (4th Cir. 2008). Because there is no conclusive evidence of ineffective assistance on the face of this record, we conclude that Faulls's claim should be raised, if at all, in a 28 U.S.C. § 2255 motion. See United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010).

### B.

Next, we consider whether the district court correctly admitted prior acts evidence under Rule 404(b). We review evidentiary rulings for abuse of discretion, United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997), and will not reverse a

district court's decision to admit prior acts evidence unless it was "arbitrary or irrational," <u>United States v. Rawle</u>, 845 F.2d 1244, 1247 (4th Cir. 1988) (citing <u>United States v. Greenwood</u>, 796 F.2d 49, 53 (4th Cir. 1986)).

Faulls asserts that the district court should not have admitted testimony regarding the Mineral and Williamsburg incidents because the evidence was neither relevant nor necessary to the charges. Alternatively, Faulls argues that the probative value of the evidence was substantially outweighed by its prejudicial effect because the evidence (if believed) demonstrated a pattern of domestic violence.

Evidence of prior wrongs is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be admissible for other purposes, including to show motive, opportunity, intent, preparation, or plan. <u>Id.</u> 404(b)(2). Prior act evidence is also admissible under Rule 404(b) to show the victim's state of mind. <u>E.g.</u>, <u>United States v. Powers</u>, 59 F.3d 1460, 1464 (4th Cir. 1995).

To be admissible under any theory, the prior act evidence must be "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." <u>United States v. Siegel</u>, 536 F.3d 306, 317 (4th Cir. 2008) (quoting <u>United States v. Wells</u>,

9

163 F.3d 889, 895 (4th Cir. 1998)).  Evidence is necessary when it is "probative of an essential claim or an element of the offense," Queen, 132 F.3d at 997, or when it "furnishes part of the context of the crime," United States v. McBride, 676 F.3d 385, 398 (4th Cir. 2012) (quoting Rawle, 845 F.2d at 1247 n.4). Even so, a district court may exclude the proffered evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.  The danger of prejudicial effect subsides when the district court gives proper limiting instructions, particularly in the face of overwhelming evidence of guilt.  See Powers, 59 F.3d at 1468; see also United States v. Briley, 770 F.3d 267, 275 (4th Cir. 2014) ("Rule 404(b) is a rule of inclusion.").

We discern no error in the district court's evidentiary rulings.  First, the evidence was relevant to issues other than character or propensity.  A jury could reasonably conclude that Faulls's motive with respect to the Mineral and Williamsburg incidents was to stop Lori from leaving the marital home or, generally, the marriage.  That same jury could conclude that Faulls committed the charged offenses because he was again upset that Lori wanted to leave the marital home and rejected his invitation to come inside.

A jury could also reasonably conclude that the evidence demonstrated Faulls's control and domination over Lori, which

was necessary to explain Lori's state of mind and her apparent willingness to remain with Faulls during the events leading to the charged offenses, even though Lori and Faulls were out in public, surrounded by others.  See Powers, 59 F.3d at 1467 (concluding that evidence of previous physical abuse by a father accused of sexually assaulting his daughter was necessary to show the power and control he had over his victim and his victim's fear of retribution for standing up to or reporting him).

Finally, we conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Faulls.  The evidence was highly probative, as it demonstrated Faulls's domination over Lori, his motive for committing the offenses, and Lori's state of mind throughout the ordeal.  Additionally, the district court gave the jury clear limiting instructions—reminding the jury that it should not consider the evidence to prove Faulls's character or his propensity to commit the charged offenses—which obviated the danger of prejudice.

## C.

Last, we consider whether the district court correctly required Faulls to register as a sex offender based on his conviction for interstate domestic violence.

The parties dispute whether Faulls preserved this claim for appeal, and the resolution of this preliminary question directs our standard of review. Usually, we review a district court's imposition of special conditions of supervised release for abuse of discretion. United States v. Holman, 532 F.3d 284, 288 (4th Cir. 2008). The government argues, however, that Faulls failed to object at sentencing, thus cabining our review to plain error. Although Faulls did not formally object when the district court asked for Faulls's thoughts on this issue—responding merely, "[W]e denied from the beginning this is a sex offense, but I would obviously leave it to the discretion of the Court," J.A. 510—we conclude that Faulls preserved the issue for review. See United States v. Lynn, 592 F.3d 572, 577–79 (4th Cir. 2010) (abandoning a "formulaic" objection standard and providing, with examples, that the goal of the contemporaneous-objection rule is to preserve the record and alert the district court to its responsibility to address the issue).

1.

Faulls contends that the district court should not have reached the question of whether his conviction for interstate domestic violence was a sex offense because the government gave "no clear indication that this should be a sex offender case based on the [Department of Justice]'s own guidelines." Appellant's Br. at 24. If by this Faulls means that the

government did not urge the district court to impose SORNA registration as a condition of supervised release, he is mistaken. If, on the other hand, Faulls means that the Department of Justice Guidelines require the government to give notice, he has not pointed this court to such a requirement, and we have not found one. In any event, Faulls cannot credibly claim to have been surprised by the issue, given that the district court's local standing order directs the probation officer to determine whether sex offender registration is appropriate, and gives the court discretion to impose the condition of supervised release at sentencing.

2.

Turning to the merits of the imposed condition, sex offenders are required to register in every jurisdiction in which the offender resides, works, and attends school. 42 U.S.C. § 16913(a). A sex offender is someone who is convicted of a sex offense, which in relevant part is defined as a criminal offense that "has an element involving a sexual act or sexual contact with another," or a "Federal offense . . . under chapter 109(A) [Sexual Abuse offenses under 18 U.S.C. § 2241 et seq.]." 42 U.S.C. § 16911(1), (5)(A)(i), (iii).

Faulls contends that because interstate domestic violence is not one of the enumerated crimes that qualifies as a sex offense under SORNA, see § 16911(5)(A)(iii), the inquiry ends

there, and the district court erred. Faulls is incorrect, however, because the statute also provides other definitions of a sex offense, including an offense with an element "involving a sexual act or sexual contact with another." § 16911(5)(A)(i).

The government says that Faulls's interstate domestic violence conviction satisfies this definition. The government's argument begins with the offense elements of interstate domestic violence, which are (1) the defendant and victim are spouses or intimate partners; (2) the defendant caused the victim to travel in interstate commerce by force, coercion, duress, or fraud; (3) the defendant, in the course of or to facilitate such travel, committed a crime of violence against the victim; and (4) the defendant committed such acts knowingly and willfully. 18 U.S.C. § 2261(a)(2). Here, the government alleged kidnapping under § 1201(a)(1) and aggravated sexual abuse under § 2241(a)(2) as the underlying crimes of violence. The jury convicted Faulls of kidnapping and also found beyond a reasonable doubt that Faulls had committed aggravated sexual abuse.

Interstate domestic violence also contains a penalty enhancement for offenders whose qualifying violent conduct constitutes sexual abuse under chapter 109A, including aggravated sexual abuse. See §§ 2241, 2261(b)(4). Because the jury found that Faulls committed aggravated sexual abuse, he

14

faced an increased statutory maximum penalty ranging from five years' imprisonment to "any term of years or life" imprisonment. §§ 2241(a), 2261(b)(4)-(5).

The government contends that the statutory enhancement is an "element" of the interstate domestic violence offense under Apprendi v. New Jersey, 530 U.S. 466 (2000), which in turn means that it is also an element of the offense for purposes of determining whether Faulls was convicted of a sex offense under SORNA. Because aggravated sexual abuse "requires engaging in a sexual act, [which] . . . necessarily requires physical contact" with another, United States v. White, 782 F.3d 1118, 1137 (10th Cir. 2015), the government contends that Faulls was convicted of "a criminal offense that has an element involving a sexual act or sexual contact with another," 42 U.S.C. § 16911(5)(A)(i), and accordingly, was subject to sex offender registration under SORNA. We agree with the government's conclusion but not its reasoning.

3.

The Constitution requires a jury to find, beyond a reasonable doubt, the elements of the criminal offense charged. In Apprendi, the Supreme Court held that this bedrock principle also applies to sentencing, declaring that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

15

submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Thus, the distinction between a substantive offense element and a sentencing (or penalty) enhancement is meaningless when the enhancement requires facts or circumstances—separate from those composing the base offense—to have taken place in order to trigger a greater punishment than the base offense statutorily carries. Id. at 476-78 & n.4.

In Alleyne v. United States, the Court extended this rule to facts that increase the prescribed statutory minimum penalty—i.e., facts that establish a new or higher mandatory minimum sentence. 133 S. Ct. 2151, 2162-63 (2013). The Court reasoned that the "impossib[ility] [of] disput[ing] that facts increasing the legally prescribed floor aggravate the punishment" leads to the logical conclusion that "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." Id. at 2161 (emphasis omitted).

Here, the jury found Faulls guilty of interstate domestic violence. For purposes of enhancing Faulls's sentence, the jury also found beyond a reasonable doubt that Faulls had committed aggravated sexual abuse. Relying on Apprendi and Alleyne, the government contends that the jury's finding also necessarily means that aggravated sexual abuse is an element of the charged interstate domestic violence offense for purposes of SORNA. We

do not agree. The fact that a jury made the finding necessary for the sentencing enhancement certainly cures any _Apprendi_ issue, but it does not answer the statutory question of whether that same finding is an "element" of Faulls's "offense" under § 16911(5)(A)(i).

The government directs us to _United States v. Campbell_, 259 F.3d 293 (4th Cir. 2001), as support for its view, but that case is inapposite. In _Campbell_, we held that the penalty enhancements in 18 U.S.C. § 111(b) were substantive elements of the offense that needed to be proved to the jury beyond a reasonable doubt, not sentencing enhancements the court could deem satisfied despite the jury's opposite finding. 259 F.3d at 298-300. But there we were conducting a constitutional inquiry. _See also, e.g._, _United States v. Brown_, 757 F.3d 183, 188 (4th Cir. 2014) (observing that the drug quantity attributable to the conspiracy, as provided in the penalty subsection of 21 U.S.C. § 841, was a question for the jury under _Alleyne_ because of the mandatory minimum sentences each quantity category carried), _cert. denied_, 135 S. Ct. 229 (2014); _United States v. Promise_, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) (holding the same under _Apprendi_). The statutory question here is substantially different.

Accordingly, we must look elsewhere for guidance. Recall that for SORNA's sex-offender registration requirements to

properly apply to Faulls, he must have been convicted of a "criminal offense that has an <u>element</u> involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(5)(A)(i) (emphasis added). Recently, in <u>United States v. Price</u>, 777 F.3d 700 (4th Cir.), <u>cert. denied</u> 135 S. Ct. 2911 (2015), we confronted the question of whether the defendant was convicted of a sex offense in order to determine whether SORNA's sex-offender registration requirements should apply. Although we were analyzing SORNA's definition of a sex offense in § 16911(5)(A)(ii) ("specified [criminal] offense against a minor") and its extension at § 16911(7) (expanding subsection (5)(A)(ii)'s definition), we nonetheless examined the statutory language of § 16911(5)(A)(i). <u>Id.</u> at 707–08. In holding that the facts-based "circumstance-specific" approach applies to a sex offense determination under § 16911(5)(A)(ii), (7), we noted in dicta that Congress's use of "elements" in § 16911(5)(A)(i) (the subsection before us now) "implicat[es] the categorical and modified categorical frameworks." <u>Id.</u> at 708.[3]

Other courts of appeals have also found these frameworks relevant to the determination of what constitutes a sex-offense

---

[3] <u>Cf. United States v. Berry</u>, 814 F.3d 192, 195 (4th Cir. 2016) (providing that courts have "embraced" the categorical and modified categorical approaches in determining a sex offender's tier classification).

under SORNA, although none has squarely applied them in the precise context before us. See United States v. Rogers, 804 F.3d 1233, 1234–38 (7th Cir. 2015) (affirming the district court's decision to enhance defendant's sentence under Guideline § 2A3.5(b)(1)(A) for committing a sex offense while in failure-to-register status, and finding that the categorical approach applies to the threshold definition of a sex offense under § 16911(5)(A)(i)); United States v. Gonzalez-Medina, 757 F.3d 425, 430 (5th Cir. 2014) (distinguishing § 16911(5)(A)(i) from § 16911(5)(C), and applying the circumstance-specific approach to the defendant's prior state conviction for having sexual intercourse with a child age sixteen or older), cert. denied, 135 S. Ct. 1529 (2015); United States v. Mi Kyung Byun, 539 F.3d 982, 991–92 (9th Cir. 2008) (comparing § 16911(5)(A)(i) to § 16911(7)(I), and applying the circumstance-specific approach to the defendant's federal conviction for importation of an alien for purposes of prostitution). Following the lead of Price and our sister circuits, we proceed here to apply the categorical and modified categorical approaches.

Thus, we "focus[] solely on the elements" of interstate domestic violence, rather than on "the specific way in which [Faulls] committed the crime," to determine whether interstate domestic violence qualifies as a criminal offense with an element involving a sexual act or contact. Price, 777 F.3d at

704-05 (quoting <u>Nijhawan v. Holder</u>, 557 U.S. 29, 34 (2009)).[4]  In applying the traditional categorical approach, we compare the elements of the defendant's offense of conviction to the elements of the federal offense (also called the "generic" offense).  There is a categorical match if "[t]he elements comprising the statute of conviction [are] the same as, or narrower than, those of the generic offense." <u>Id.</u> at 704; <u>e.g.</u>, <u>United States v. Torres-Miguel</u>, 701 F.3d 165, 168-69 (4th Cir. 2012) (finding no categorical match between defendant's California felony threat conviction and a "crime of violence" under the U.S. Sentencing Guidelines because threatening to commit a crime against another that will result in death or serious injury (crime of conviction) does not necessarily require "the use, attempted use, or threatened use of physical force against [another]" (generic offense)).

---

[4] The district court did not have the benefit of our decision in <u>Price</u>, and neither party on appeal has urged that we apply the elements-based approach to determine whether Faulls was convicted of a sex offense.  Although we generally do not consider issues not passed upon below, the question before us is purely one of law, and we perceive no injustice or unfair surprise in doing so here.  <u>See</u> <u>Singleton v. Wulff</u>, 428 U.S. 106, 120-21 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").  Nor are we are bound by the district court's reasoning—or the arguments advanced by the parties—in exercising our plenary review. <u>United States v. Segers</u>, 271 F.3d 181, 183 (4th Cir. 2001); <u>United States v. Rhynes</u>, 218 F.3d 310, 320 (4th Cir. 2000).

The modified categorical approach is almost identical, but it applies only to divisible statutes—those containing alternative elements—and it entails a brief "detour." Price, 777 F.3d at 705. Before looking for a categorical match, we consider a limited number of trial documents, including the indictment and jury instructions, to determine which alternative element formed the basis of the conviction. Descamps v. United States, 133 S. Ct. 2276, 2284–85 (2013). Then the traditional elements-based approach resumes. Id.; e.g., United States v. Castleman, 134 S. Ct. 1405, 1414 (2014) (applying the modified categorical approach to a Tennessee statute that defined assault in three distinct ways, and finding that the defendant's conviction for "intentionally or knowingly caus[ing] bodily injury to the mother of his child" qualified as a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9) because it "necessarily involve[d] the use of physical force" (internal quotation marks omitted)).

Under either approach, we compare the elements of interstate domestic violence with the generic offense—here, SORNA's definition of a sex offense: "a criminal offense that has as an element involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(5)(A)(i). As relevant, to be convicted of interstate domestic violence, the defendant must commit an underlying crime of violence against a spouse or

intimate-partner victim.  <u>See</u> 18 U.S.C. § 2261(a)(2).  A crime

of violence is defined as

> [A]n offense that has an element the use, attempted
> use, or threatened use of physical force against the
> person or property of another, or any other offense
> that is a felony and that, by its nature, involves a
> substantial risk that physical force against the
> person or property of another may be used in the
> course of committing the offense.

§ 16.

It is well established that some sex offenses qualify as

crimes of violence.  <u>See</u> U.S. Sentencing Guidelines Manual

§ 4B1.2, comment. (n.1) (U.S. Sentencing Comm'n 2012)

[hereinafter U.S.S.G. § 4B1.2] (including "forcible sex

offenses" in the enumerated list of established crimes of

violence; <u>United States v. Peterson</u>, 629 F.3d 432, 435 (4th

Cir. 2011) (calling the Guidelines commentary "authoritative and

binding").  But a crime of violence is not <u>necessarily</u> a sex

offense, which means that interstate domestic violence

necessarily "'sweeps more broadly' and criminalizes more conduct

than the generic federal" sex offense, precluding a categorical

match.  <u>Omargharib v. Holder</u>, 775 F.3d 192, 196 (4th Cir. 2014)

(quoting <u>Descamps</u>, 133 S. Ct. at 2283).

As a result, we consider whether interstate domestic

violence is divisible for purposes of the modified categorical

approach, meaning it must "set[] out one or more elements of the

offense in the alternative." <u>Descamps</u>, 133 S. Ct. at 2281.  In

_Descamps v. United States_, the Supreme Court found that California's burglary statute "d[id] not concern any list of alternative elements" but rather "involve[d] a simple discrepancy" between generic burglary, which requires unlawful entry, and California's statute, which does not. _Id._ at 2285. So although California's statute was defined using disjunctive elements, _see_ Cal. Penal Code Ann. § 459 (West 2010) (defining burglary as the entering of certain locations "with intent to commit grand _or_ petit larceny _or_ any felony" (emphasis added)), and therefore "refer[red] to several different crimes," _Descamps_, 133 S. Ct. at 2284 (quoting _Nijhawan_, 557 U.S. at 35), none of those crimes required breaking and entering. Because California's burglary statute did not match the generic version of burglary envisioned by the federal statute, applying the modified categorical approach was improper.

We grappled with the reach of _Descamps_ in _United States v. Cabrera-Umanzor_, 728 F.3d 347 (4th Cir. 2013). There, we announced that "[w]here the statute defines the offense broadly rather than alternatively, the statute is not divisible, and the modified categorical approach simply 'has no role to play.'" _Cabrera-Umanzor_, 728 F.3d at 350 (quoting _Descamps_, 133 S. Ct. at 2285). Although we did not explain the broad-alternative distinction, we found that the divisibility determination turns

on the availability of a categorical fit, and not on the strict statutory inclusion of textual alternatives.

In deciding whether a Maryland child abuse conviction constituted a crime of violence for sentencing purposes, we said that the disjunctive state statute was "generally divisible" because the offender could be either a family member or an individual with responsibility for the child's supervision, either physical abuse or sexual abuse constituted the abuse element of the statute, and sexual abuse could be alternatively defined as sexual molestation or sexual exploitation. Id. at 352 (defining the elements of Md. Code Ann., Crim. Law § 35C). But general divisibility, we said, was not enough: "[O]nly if at least one of the categories into which the statute may be divided constitutes, by its elements, [the generic federal offense]" is the statute divisible "for purposes of applying the modified categorical approach." Id. Because no arrangement of the state child-abuse statute's alternative elements lined up with the elements of a crime of violence, we found the statute indivisible. Id.

Applying these cases to the particular statute before us, we hold that Faulls's crime of conviction encompasses, by its crime of violence element, additional, alternative offense elements, "effectively creat[ing] several different crimes." Descamps, 133 S. Ct. at 2285. This is so because a defendant

convicted of interstate domestic violence may have committed, for example, assault with a deadly weapon, murder, or sexual assault as the underlying crime of violence. See, e.g., United States v. Barnette, 644 F.3d 192, 197–98 (4th Cir. 2011) (murder); United States v. Brown, 295 F.3d 152, 153–54 (1st Cir. 2002) (sexual assault); United States v. Bowe, 309 F.3d 234, 236 (4th Cir. 2002) (assault with a deadly weapon).

Admittedly, the offense of interstate domestic violence presents an unusual set of circumstances for the divisibility analysis. To begin with, the offense does not set out on its face, in the disjunctive or otherwise, a list of alternative crimes that constitute the offense, but rather requires the defendant to commit an underlying "crime of violence." This case also requires that we compare a contemporaneous federal conviction—rather than (as is more typical) a prior, state conviction—to the generic federal offense.

But these anomalies have no bearing on the modified categorical approach's application here. See United States v. Ortiz-Gomez, 562 F.3d 683, 684–85 (5th Cir. 2009) (applying the modified categorical approach to a state statute criminalizing the communication of a threat to "commit any crime of violence" to determine what underlying crime of violence supported the

defendant's conviction).[5]  Importantly, in a prosecution for interstate domestic violence, the jury is charged with finding, unanimously and beyond a reasonable doubt, the commission of a specific underlying crime of violence, as well as the elements of that offense.  See Omargharib, 775 F.3d at 198–99 (looking to how the Virginia courts instruct juries with respect to larceny to determine whether the offense is defined to include multiple alternative elements); United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013) (same, with Maryland assault statute). Interstate domestic violence therefore consists of multiple alternative elements, as we define them for modified categorical approach purposes: "Elements, as distinguished from means, are factual circumstances of the offense the jury must find 'unanimously and beyond a reasonable doubt.'"  Omargharib, 775 F.3d at 198 (quoting Royal, 731 F.3d at 341).

Treating interstate domestic violence as divisible for purposes of the modified categorical approach dovetails with the inquiry's function and harmonizes its purpose.  "The point of the categorical inquiry [after all] is not to determine whether

---

[5] And as Judge Shedd's concurrence notes, we have applied the categorical approach to instant offenses when determining whether the defendant should be sentenced as a "career offender" under the Sentencing Guidelines for having committed a "crime of violence."  See United States v. Johnson, 953 F.2d 110, 114 (4th Cir. 1991); accord United States v. Martin, 215 F.3d 470, 474 (4th Cir. 2000).

the defendant's conduct <u>could</u> support a conviction for a [sex offense], but to determine whether the defendant was <u>in fact convicted</u> of a crime that qualifies as a [sex offense]." <u>Cabrera-Umanzor</u>, 728 F.3d at 350.

Here, without looking to the relevant documents in the record, we would have no way of knowing whether Faulls's conviction constitutes a sex offense because we do not know from the facial elements of § 2261(a)(2) what underlying offense substantiated the finding of domestic violence. But when we look to the jury instructions and the indictment, we see that the underlying crime of violence—aggravated sexual abuse—and its elements were put to the jury and found unanimously beyond a reasonable doubt. <u>See</u> Supp'l J.A. 615, 650-55; J.A. 11. This analysis thus furthers the categorical framework's purpose without frustrating its goal of "avoid[ing] conducting 'mini-trials' for each prior offense." <u>United States v. Gomez</u>, 690 F.3d 194, 200 (quoting <u>United States v. Spence</u>, 661 F.3d 194, 198 (4th Cir. 2011)).

Our interpretation also comports with our past practice. <u>See, e.g.</u>, <u>United States v. Rivers</u>, 595 F.3d 558, 563 (4th Cir. 2010) ("[O]nly when a statute prohibits different types of behavior such that it can be construed to enumerate separate crimes can a court modify the categorical approach . . . ."); <u>Gomez</u>, 690 F.3d at 198 (applying the modified approach when

27

"different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes"). And it is consistent with the practice of our sister circuits. See, e.g., United States v. Mahone, 662 F.3d 651, 654 (3d Cir. 2011) (calling for the modified approach "[w]hen the enumerating statute invites inquiry"), abrogated on other grounds by Descamps, 133 S. Ct. 2276; United States v. Williams, 627 F.3d 324, 327-28 (8th Cir. 2010) (providing that the modified categorical approach is used when "the conviction criminalizes both conduct that does and does not qualify as [the generic federal offense]").

Our holding also aligns with SORNA's legislative goal of "strengthen[ing] and increas[ing] the effectiveness of . . . sex offender registration and notification [for the protection of the public]". United States v. Gould, 568 F.3d 459, 464 (4th Cir. 2009) (quoting The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38030 (July 2, 2008)); see also Taylor v. United States, 495 U.S. 575, 581-90 (1990) (looking to the statutory background and purpose of the ACCA to determine how to apply the categorical approach to the state offense at issue).

Congress passed SORNA to fill the "gaps" and "loopholes" left by its predecessor act's "patchwork" standards, which "allowed for numerous heinous crimes" to be unaffected by

28

registration requirements.  <u>Gould</u>, 568 F.3d at 473-74.  It would make little sense, then, in the context of a law that was designed to bolster public protection through comprehensive sex-offender registration, to bar courts from peering behind the statutory curtain to determine what offense the defendant actually committed when the offense of conviction contains as an element another generic federal crime acting as a placeholder for the substantive offense.

In sum, because aggravated sexual abuse "involv[es] a sexual act or sexual contact with another," Faulls was convicted of a criminal offense that "has an element involving a sexual act or sexual contact with another"—a sex offense.  42 U.S.C. § 16911(5)(A)(i).  Accordingly, the district court did not err in requiring Faulls to register as a sex offender under SORNA.

### III.

For the reasons given, we affirm the district court's judgment.

<u>AFFIRMED</u>

SHEDD, Circuit Judge, concurring:

The majority applies the categorical approach to determine if Faulls's conviction for interstate domestic violence is a "sex offense" under 18 U.S.C. § 16911(5)(A)(i). Regardless of whether the categorical approach should apply to past convictions under this section, if I were deciding this issue on a clean slate, I would not apply it in the context of this case, which involves an instant offense. As the Tenth Circuit has explained, "the practical difficulties of conducting an ad hoc mini-trial" that drive us to apply the categorical approach to a past conviction "do not apply when the court is examining the conduct of the defendant in the instant offense." United States v. Riggans, 254 F.3d 1200, 1203-04 (10th Cir. 2001) (quotation marks and alterations omitted); see also United States v. Williams, 690 F.3d 1056, 1069 (8th Cir. 2012) (same).

The categorical approach does not save judicial resources because we are continuously called upon to determine whether past convictions—on a state-by-state basis—qualify as predicate offenses in multiple contexts, including sentencing. This situation has left "[t]he dockets of our court . . . clogged with these cases." United States v. Vann, 660 F.3d 771, 787 (4th Cir. 2011) (Agee, J., concurring). Further, the categorical approach is the antithesis of individualized sentencing; we do not consider what the individual to be sentenced has actually

done, but the most lenient conduct punished by his statute of conviction. This flaw is even more apparent in cases like this one, involving instant offenses: the district judge sat through Faulls's trial, heard the evidence against him, and witnessed the jury's finding that Faulls committed aggravated sexual abuse against his wife. The categorical approach then requires the "counter-intuitive procedure" whereby that same judge "must ignore the actual trial record and the facts and inferences drawn from the testimony" to determine if Faulls's conviction was for a "sex offense." United States v. Stoker, 706 F.3d 643, 651 (5th Cir. 2013) (Jones, J., concurring).

Notwithstanding my view, however, circuit precedent rejects this distinction between past convictions and instant offenses. See United States v. Johnson, 953 F.2d 110, 114 (4th Cir. 1991) (noting the "substantial intuitive appeal" of applying a circumstance-specific approach to instant offenses but nonetheless concluding that the approach "must . . . be rejected"); United States v. Martin, 215 F.3d 470, 474 (4th Cir. 2000) (applying categorical approach to instant conviction "no matter how clear it may be from the record" that the defendant committed a crime of violence). I therefore concur in Judge Diaz's thoughtful opinion for the court.