## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 3:13CR00001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THOMAS EARL FAULLS, SR.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| | ) | |
| Defendant. | ) | |

*Sean M. Welsh, Assistant United States Attorney, Charlottesville, Virginia, for United States; Arin Melissa Brenner, Assistant Federal Public Defender, Roanoke, Virginia, for Defendant.*

The defendant, a federal inmate sentenced by this court, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel, prosecutorial misconduct, and the imposition of an illegal sentence. In addition, he seeks to vacate two counts of conviction on the ground that their predicate offenses were not crimes of violence. For the reasons stated, I will grant the defendant's § 2255 motion in part and direct a resentencing.

### I.

The defendant, Thomas Earl Faulls, Sr., and his estranged wife, Lori Faulls, were married for nearly 25 years and have two children together. In 2012, the couple separated, and Lori moved out of the marital home located in Mineral, Virginia. She stayed briefly with a friend before moving in with the Faulls' daughter, Britnee, in

Williamsburg, Virginia.  Following their separation, Faulls harassed Lori on several occasions, which led to violent episodes, three of which are relevant here.

First, on June 28, 2012, when Lori returned to the marital home to retrieve some personal effects, Faulls began yelling at her for leaving him and blamed her for their children not returning his phone calls.  He went outside to the detached garage and returned shortly thereafter with a firearm.  Lori asked Faulls if he was going to kill her, to which he laughed in response.  Faulls then began yelling at Lori about where she had stayed the night before.  Lori called the friend with whom she had stayed, and Faulls talked to the friend, screaming at the friend that she had "ruined [their] marriage" and stating that "you just killed your friend."  Presentence Investigation Report (PSR) ¶ 4, ECF No. 73; Trial Tr. 93, ECF No. 90.  Lori escaped the situation, but after she fled, Faulls chased after her in his truck and ran it into the back of her car.  She claimed that she had never reported the incident because she had been "scared to death."  Trial Tr. 96, ECF No. 90.

Second, on August 18, 2012, Faulls showed up at Britnee's apartment and started screaming at Lori and Britnee for not answering their phones.  He "punched Lori in this chest and verbally threatened his daughter."  PSR ¶ 5, ECF No. 73.  He took their car keys and cell phones and refused to allow them to leave the residence. It was only after Britnee gave him $300 that he allowed her (but not Lori) to leave.

Faulls left a while later, taking Lori's vehicle instead of his own.  He returned afterwards to exchange the vehicles but made no further contact with Lori.

Finally, a few days later, on August 22, 2012, Faulls asked Lori to drive him to a repair shop to pick up his truck.  Afraid that he would show up at their daughter's apartment again if she refused, Lori agreed to pick him up from the marital home. After they departed to pick up the truck, Faulls pretended to make a call to ensure the truck repair was finished.  Thereafter, they turned around and returned to the house.  It was then that Faulls admitted that he already had the truck at the house. He parked Lori's car in the garage and took her cell phone.  He then told her that they were going to take a trip, and with zip ties in hand, asked if she "wanted to do this the easy way or the hard way."  Trial Tr. 112, ECF No. 90.  She told him that she would "just come home," and that he "d[idn't] have to do this."  *Id.*  Faulls disregarded her pleas and escorted her to the passenger side of the truck.  Lori saw a shotgun in the backseat and Faulls told her that he had fixed the door handle so it would not open from the inside and jammed the window so that it would not roll down all the way.

Faulls began driving north and eventually they stopped at a hotel near Elkins, West Virginia, for the night.  The next morning, Faulls attempted to have sexual intercourse with Lori.  She told him that she did not want to and that she felt uncomfortable, but ultimately acquiesced because she was "scared for [her] life,"

"he had a gun," and she "didn't want to make him angry." *Id.* at 117.  Afterwards,

Faulls took Lori to breakfast and then to various retail stores to purchase clothes and

toiletries.  They continued driving and that evening, stopped in Lewisburg, West

Virginia, where Faulls took Lori to a local restaurant and bar.  Faulls drank heavily,

while Lori had only one drink.  Lori left to go to the bathroom a few times over the

course of the evening, and one time, as she came back, she overheard Faulls telling

the "three guys sitting next to [them] at the bar . . . that he had kidnapped [her]." *Id.*

at 124.  She did not ask anyone for help or attempt to call the police, even though

there was a pay phone located near the bathroom.

After leaving the bar, they attempted to book a room at a nearby hotel, but

there were no rooms available.  As they started walking back towards the truck, Lori

realized that Faulls was no longer close behind her and so she fled.  She approached

two women and asked if they could take her to the nearest police station.  They drove

her to the nearby sheriff's office, where Lori reported what had happened to her.

The sheriffs' deputies went to find Faulls and immediately placed him under arrest.

A subsequent search of his truck revealed the zip ties and the shotgun.

In January of 2013, a grand jury of this court returned a three-count

Indictment, charging Faulls with kidnapping, in violation of 18 U.S.C. § 1201(a)(1)

(Count One); interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(2),

(b)(4) (Count Two); and possession of a firearm in furtherance of a crime of

violence, in violation of 18 U.S.C. § 924(c) (Count Three).  At trial, the court allowed the government to introduce evidence of the June 28th and August 18th incidents pursuant to Federal Rule of Evidence 404(b).  However, the court twice gave the jury a limiting instruction regarding this evidence, explaining that it could be considered only to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in connection with the charges and not as evidence of the defendant's character or propensity to commit the alleged offenses.  Trial Tr. 59, 97, ECF No. 90.

The jury convicted Faulls of all three counts.  The jury also determined beyond a reasonable doubt that as to Count Two, Faulls had committed aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(2), and that he had possessed a firearm in furtherance of the kidnapping, as alleged in Count One.  Jury Verdict 1, 2, ECF No. 60.

At sentencing on July 17, 2014, by the late District Judge Glen E. Conrad, the court adopted a guideline scoring for Counts One and Two consisting of a total offense level of 40 and a criminal history category of I, with a resulting advisory sentencing range of 292 to 365 months' imprisonment.  The guideline sentence for Count Three was 60 months, the statutory minimum term of imprisonment, to be served consecutive to any other sentence.  Judge Conrad decided to vary downward in the guideline scoring for Counts One and Two to a total offense level of 38, based

on Faulls' mental health issues, Sent'g Tr. 59–60, ECF No. 88, which level carried a sentencing range of 235 to 293 months.  Faulls was thus sentenced to a total of 295 months' imprisonment, consisting of 235 months on each of Counts One and Two, to be served concurrently, and 60 months on Count Three, to be served consecutively to the terms imposed on Counts One and Two, to followed by 15 years of supervised release on each count, to be served concurrently.  The court also required Faulls to register as a sex offender under the Sex Offender Registration and Notification Act, 42 U.S.C § 16911, *now codified at* 34 U.S.C. § 20911.

Faulls appealed and argued that (1) his counsel had been constitutionally ineffective during his cross-examination of a witness and in failing to object to the court's decision to keep the jury late on day one of the trial; (2) the court erred in admitting evidence of the two prior June and August incidents; and (3) the court erred in requiring Faulls to register as a sex offender based on his conviction for interstate domestic violence.  The Fourth Circuit rejected all of these arguments and affirmed.  *United States v. Faulls*, 821 F.3d 502 (4th Cir. 2016).

Thereafter Faulls filed the present § 2255 motion.[1]  The defendant asserts in his initial pro se motion that: (1) his trial counsel was constitutionally ineffective in failing to adequately prepare for trial, specifically by not interviewing certain

---

[1]  The § 2255 motion was initially filed in the United States District Court for the Northern District of West Virginia and was transferred to this court.

witnesses or seeking a psychological evaluation of Lori; (2) his sentence enhancement was illegal, because he did not use the firearm in a criminal manner and his offense was not a sex offense, as any sexual acts between himself and Lori were consensual; and (3) government counsel committed prosecutorial misconduct during closing arguments. He also filed an affidavit, signed by himself, stating that he had receipts for purchases made by Lori at the various retail stores; that the bar owner would have testified that Lori "was not being held against her will," and that she had walked by a telephone near the bathroom but "did not use the opportunity to call the police"; that he had limited interaction with trial counsel and during their third meeting, which occurred two days before trial, his counsel did not "discuss any evidence with [him], nor had he investigated" the receipts or eyewitness testimony; and that trial counsel had failed to object to prior bad acts evidence and had failed to introduce certain evidence in his defense, including surveillance video tapes from the retail stores and forensic evidence. 2255 Mot. Ex. 3, Faulls Aff. ¶¶ 2, 5, 7–8, ECF No. 100-3.

After filing his initial § 2255 motion pro se, Faulls became represented by counsel and on August 19, 2019, a motion to amend was filed, seeking to vacate his convictions on Counts Two and Three on the ground that their predicate offenses did not qualify as crimes of violence. The motion to amend was granted and the

government responded, conceding that Faulls' conviction under Count Three should be vacated but opposing the claim as to Count Two.[2]

The court stayed consideration of the defendant's motion as amended, pending the outcome of the Fourth Circuit's decision in the case of *United States v. Jackson*, which was projected to consider whether aggravated sexual abuse constitutes a crime of violence. The Fourth Circuit issued its decision in *Jackson* but declined to reach that issue. *United States v. Jackson*, 32 F.4th 278, 284 n.5 (4th Cir. 2022). The defendant's § 2255 motion is thus now ripe for decision.[3]

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). He must "state facts that point

---

[2] The government does not assert that Faulls' amendment, is untimely or successive.

[3] *Jackson* was also held in abeyance by the court of appeals pending a decision by the Supreme Court, but that decision also did not resolve the issue. *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (holding that offenses criminalizing reckless conduct do not meet the definition of a violent felony).

to a real possibility of constitutional error." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).[4]  "[V]ague and conclusory allegations . . . may be disposed of without further investigation by the District Court." *Id.*

## A. INEFFECTIVE ASSISTANCE OF COUNSEL.

Criminal defendants have a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In a § 2255 motion, constitutionally deficient counsel can serve as "cause" for a procedurally defaulted claim.  *Prieto v. Zook*, 791 F.3d 465, 469 (4th Cir. 2015).  To prove ineffective assistance, the defendant must satisfy both prongs of the two-prong test: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.  Such claims are not lightly granted: a petitioner must overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021).

Faulls alleges that his trial counsel was constitutionally deficient because he ignored relevant evidence and failed to adequately prepare for trial.  Specifically, he

---

[4]  I have omitted internal quotation marks, citations, and alterations here and throughout this opinion unless otherwise noted.

claims that his counsel failed to interview or call certain witnesses at trial, namely the bar owner, Tony Juker, and his counsel failed to obtain certain evidence, such as video tapes and forensic evidence. Faulls claims that this evidence would have shown that Lori had accompanied him "freely" and "voluntarily" without any restraints or force and that she did not attempt to flee or call for help despite having several opportunities to do so. Def.'s Resp. 2, ECF No. 107. He further contends that his trial counsel failed to object to the introduction of prior bad acts evidence under Rule 404(b).

I find that the record belies most of Faulls' allegations. In fact, it shows that his trial counsel did exactly what Faulls claims he failed to do. To begin with, Tony Juker did testify at trial, and on cross-examination, Faulls' counsel elicited testimony from Juker that Lori "didn't appear to be in a stressful situation," that she was "free to leave," and that he "didn't feel like she was being held against her will." Trial Tr. 45, ECF No. 91. Juker further testified that he did not take Faulls' comments about kidnapping Lori "seriously, given the alcohol that he was drinking" that night, and that Lori could have placed a call to the police from inside the restaurant. *Id.* at 45, 47. Defense counsel elicited similar testimony from other bar patrons, who affirmed that Lori was not physically restrained and that she had wandered about the bar freely. *Id.* at 19, 28. Lori even admitted on cross-examination that she was "in a lot of public places" where she could have asked for help, including retail stores, hotels,

gas stations, and restaurants.  Trial Tr. 160, 164, ECF No. 90.  In addition, Britnee testified that Lori voluntarily drove to the marital home to pick up Faulls, which started the entire ordeal, and their adult son, Thomas Ethan Faulls, testified that there was a possible innocent explanation for the zip ties.  *Id.* at 27, 43.  Thus, it is evident that Faulls' trial counsel thoroughly challenged Lori's version of events, and he appeared more than adequately prepared for trial.

With regard to the other allegations, the defendant has failed to demonstrate prejudice.  First, it is unlikely that the video tapes would have changed the outcome. Lori and several eyewitnesses already testified that she was never physically restrained and that she did not attempt to flee or call the police.  Similarly, it is unclear how forensic evidence, such as fingerprint or DNA evidence, would have changed the outcome.  In any event, I am not required to resolve such vague claims. *Dyess*, 730 F.3d at 359.  Whether Faulls' trial counsel should have sought a psychological evaluation of Lori is the kind of strategic litigation decision that is afforded deference by the court.  *Boseman v. Bazzle*, 364 F. App'x 796, 804–05 (4th Cir. 2010) (unpublished).  Regardless, Faulls has not demonstrated prejudice.  He alludes only to the potential that his counsel would have uncovered that Lori is emotionally unstable and that she had experienced abuse as a child.  Presumably, this evidence could have shown the jury that Lori lacked credibility.  But the jury considered more than just Lori's testimony; it also considered the evidence from her

two adult children as well as law enforcement officers and several bar patrons — who all gave testimony that was consistent with her version of the events.

Finally, as to the defendant's claim regarding 404(b) evidence, that issue was decided on direct appeal, *Faulls*, 821 F.3d at 508–09, and Faulls is precluded from relitigating the issue on collateral review. The record further shows that trial counsel renewed his objections to the introduction of this evidence at trial, contrary to Faulls' claims. Trial Tr. 5, 58, 74–79, 90, 97, ECF No. 90.

### B. Sex Offender Registration and Sentence Enhancement.

The defendant argues that his interstate domestic violence conviction was not a "sex offense," and that the court erred in requiring him to register as a sex offender. However, he already raised this issue on direct appeal. *Faulls*, 821 F.3d at 516. He may not relitigate the issue in a § 2255 motion.

Faulls also contends that his sentencing enhancement for aggravated sexual abuse, pursuant to 18 U.S.C. § 2261(b)(4), which increased the maximum statutory penalty from five years to any term of years or life, was unconstitutional because "[t]he jury did not make its own finding to this element of the alleged offense." 2255 Mot. Ex. 1, Mem. Supp. 7–8, ECF No. 100-1.[5] Specifically, he claims that the

---

[5] Faulls also argues that his conviction under Count Three for use of a firearm in furtherance of a crime of violence is illegal because he did not "use it in any criminal manner." *Id.* at 6. Because the government concedes that Count Three should be vacated on a different ground, I will not address this argument.

enhancement violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. But Faulls is wrong that that his enhancement was not submitted to the jury. To the contrary, the jury found beyond a reasonable doubt that Faulls had committed aggravated sexual abuse. Jury Verdict 2, ECF No. 60.

### C. PROSECUTORIAL MISCONDUCT.

A defendant claiming prosecutorial misconduct must establish such improper conduct and that the conduct "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990). Here, the defendant makes only vague and conclusory allegations of prosecutorial misconduct. He alleges that the prosecutor used "extreme emotional disturbance, denigrating the defense itself by implying the defense of last resort, ladies and gentlemen." 2255 Mot. Mem. Supp. 10, ECF No. 100-1. But he has not identified any particular statements that were improper, let alone one that prejudiced him. Thus, I will dismiss this claim.

### D. PREDICATE CRIMES OF VIOLENCE.

Finally, the defendant seeks to vacate his convictions under Count Two and Three on the ground that the predicate crimes required for such convictions are not crimes of violence when viewed categorically, without reference to the actual events

charged. These claims require a close examination of the precedents that I must follow in construing the statutory language defining crimes of violence.

In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), enhancing the penalty based on underlying predicate offenses that "involve[d] conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague and violated due process because it left "grave uncertainly about how to estimate the risk posed by a crime." 576 U.S. at 593, 597. Since then, similar language in other statutes has also been held to be unenforceable. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211, 1215–23 (2018) (holding unconstitutional residual clause of 18 U.S.C. § 16(b) defining a crime of violence as a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"); *United States v. Davis*, 139 S. Ct. 2319, 2324, 2336 (2019) (invalidating residual clause of 18 U.S.C. § 924(c)(3)(B) defining crime of violence as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.").[6]

---

[6]   The new rule the Supreme Court recognized in *Johnson* applies retroactively to cases on collateral review. *Welch v. United States*, 578 U.S. 120, 135 (2016).

These decisions left untouched an alternative definition of a crime of violence in each relevant statute under a separate clause, called the "elements" or "force" clause.  For example, a crime of violence is defined in § 924(c)'s force clause as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The language used in the force clause of § 16 similarly defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).

As to Count Three, the government concedes that the defendant's conviction for violating 18 U.S.C. § 924(c) must be vacated, because the predicate offense relied on for that conviction — kidnapping under 18 U.S.C. § 1201, as charged in Count One — does not qualify as a crime of violence under the statute's force clause.  The Fourth Circuit has held that federal kidnapping is not a force clause offense.  *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019).  Accordingly, I will vacate the defendant's sentence as to Count Three.

As to Count Two, charging interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(2), (b)(4), Faulls contends on similar grounds that his conviction is invalid.  Section 2261 makes it unlawful for a person to travel in interstate commerce with the "intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and . . . in the course of or as a result of such travel or

presence, commit[] or attempt[] to commit a *crime of violence* against that spouse, intimate partner, or dating partner."   18 U.S.C. § 2261(a)(1) (emphasis added). Faulls argues that the predicate crime of violence relied on for that conviction — aggravated sexual abuse under 18 U.S.C. § 2244(a) — does not meet the definition under the force clause contained in 18 U.S.C. § 16(a).   Under that definition, the force required must be "*violent* force — that is, force capable of causing physical pain or injury to another person."  *United States v. Runyon*, 994 F.3d 192, 200 (4th Cir. 2021) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).   However, "the degree of force . . . need not be 'substantial,' nor must the altercation between the offender and the victim result in any injury or pain."  *United States v. Melaku*, 41 F.4th 386, 392 (4th Cir. 2022) (quoting *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019)).   Rather, the "use of the word 'capable'" demonstrates that "[the] definition of physical force is concerned with only the potential that the force used could cause pain or injury, rather than the likelihood that it will."  *Stokeling,* 139 S. Ct. at 554.

To determine if an offense is a crime of violence under the force clause, courts must "look only to the statutory definition — *i.e.*, the elements of the offense of conviction rather than the particular facts underlying a defendant's conviction." *United States v. Al-Muwwakkil*, 983 F.3d 748, 754 (4th Cir. 2020).  "[W]hen an offense includes alternative elements for conviction, it becomes divisible, and courts

may then use a modified categorical approach to determine which element played a part in the defendant's conviction." *Runyon*, 994 F.3d at 200–01.  The court under this approach "can look beyond the statutory elements to the charging paper and jury instructions . . . to determine what offense the defendant was convicted of committing."  *Al-Muwwakkil*, 983 F.3d at 755.  But once the specific offense is identified, "the traditional elements-based approach resumes." *Faulls*, 821 F.3d at 513.  And the court must then determine whether, based only on the elements of that offense, there is a "realistic probability — not merely a theoretical possibility — that the minimum conduct *necessary* for conviction" requires the "use of physical force." *Runyon*, 994 F.3d at 200.

"Aggravated sexual abuse under Section 2241(a) 'prohibits forced sexual acts against another person.'"  *United States v. Shaw*, 891 F.3d 441, 447 (3d Cir. 2018) (quoting *Lockhart v. United States*, 577 U.S. 347, 353 n.1 (2016)).  That statute is violated where the offender "knowingly causes another person to engage in a sexual act -- (1) by using force against another person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so."  18 U.S.C. § 2241(a).  I first must determine whether § 2241(a) is divisible statute.

"[W]hen determining whether a statute is indivisible or divisible, courts 'start with the text.'"  *Al-Muwwakkil*, 983 F.3d at 755 (quoting *United States v. Allred*,

942 F.3d 641, 649 (4th Cir. 2019)).  The "mere use of the disjunctive 'or' in the definition of a crime does not automatically render it divisible."  *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).  "Instead, courts must determine whether the text 'enumerates various factual means of committing a single element' of one offense or 'lists multiple elements [and thus multiple offenses] disjunctively.'"  *Al-Muwwakkil*, 983 F.3d at 755 (quoting *Mathis v. United States*, 579 U.S. 500, 506 (2016).  "[T]he focal point of the analysis is what the jury must find (or a defendant must admit) to convict," and thus, courts will often "consult how courts generally instruct juries."  *Id.*

The court instructed the jury that in order to convict Faulls, they must find, beyond a reasonable doubt, that Faulls (1) "caused [the victim] to engage in a sexual act"; (2) "used force against [the victim], or threatened or placed her in fear that she or any other person would be killed, suffer serious bodily injury, or be kidnapped"; and (3) "did these acts knowingly."  Jury Instrs. 38, ECF No. 65.  It is clear from the instructions that the disjunctive list sets out different factual means of committing the offense, not separate elements.  In other words, the statute is best read to contain three elements: (1) a sexual act; (2) unwillingness, as demonstrated either by force or threats of force; and (3) specific intent by the offender.  The second element can be satisfied in four possible ways: use of force, threat of death, threat of serious bodily harm, or threat of kidnapping.  Thus, I apply the categorical approach to

determine if "the most innocent conduct that the law criminalizes" requires the use, attempted use, or threatened use of physical force.  *Al-Muwwakkil*, 983 F.3d at 760.

The defendant makes three alternative arguments in support of his claim that aggravated sexual abuse under § 2241(a) is not a force clause offense.  First, the defendant argues that an offense under § 2241(a)(1) requires the use of force, but not physical force, as force may be implied from disparity in coercive power or size between the defendant and the victim.  Second, the defendant argues that kidnapping under § 2241(a)(2) may be committed by deceit or inveiglement, which do not require the use of physical force.  Finally, the defendant maintains that because a conviction under § 2241(a) can be sustained by the attempted use or threat of force, it is similar to conspiracy offenses, which does not require that the government prove the use of force, or even the attempted use of force.

I will consider the arguments seriatim.

*1. Use of Force Under § 2241(a)(1).*

The defendant argues that the use of force under § 2241(a)(1) does not require physical force.  The defendant relies principally upon *United States v. Johnson*, 492 F.3d 254 (4th Cir. 2007).  *Johnson* defined force under § 2241(a)(1) as "force sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim."  *Id.* at 257.  The court further noted that the force element may be inferred "when the offender has

disproportionately greater strength than, or coercive power over, the victim." *Id.* at 258. The Fourth Circuit more recently reaffirmed this definition in *United States v. Cammorto*, 859 F.3d 311, 315 (4th Cir. 2017), explaining that force "includes not only physical force, but also the use of a threat of harm sufficient to coerce or compel submission by the victim, so long as that threat is sufficient to overcome, restrain, or injure a person."

The defendant contends that because force may be inferred by such facts as a disparity in size or coercive power, the minimum conduct required to commit aggravated sexual abuse does not require as an element the actual use, threatened use, or attempted use of physical, violent force. But I do not find that these cases can bear the weight of the defendant's argument. The defendant's focus on the disparity inference ignores *Johnson*'s narrower holding; it is also inconsistent with the definition of force actually adopted in *Johnson* and clarified in *Cammorto*.[7]

---

[7]    The definition of force adopted in *Johnson* is based on the House Judiciary Committee Report accompanying the Sexual Abuse Act of 1986. *Johnson*, 492 F.3d at 258. The House Report provides that for § 2241(a) "[t]he requirement of force may be satisfied by a showing of [1] the use, or threatened use, of a weapon; [2] the use of such physical force as is sufficient to overcome, restrain, or injure a person; or [3] the use of a threat of harm sufficient to coerce or compel submission by the victim." H. Rep. No. 99–594 at 14 n.54a. The definition adopted in *Johnson* appears to adopt this definition in part — including only (2) without "physical" to describe force and (3). However, as the Third Circuit emphasized, "the House Report purports to define something specific — the requirement of force for Section 2241(a)." *Shaw*, 893 F.3d at 449. But it "does not purport to define the element 'using force against th[e] other person' under Section 2241(a)(1)," a point that the *Shaw* court specifically called out the *Johnson* court for overlooking. *Id.* Moreover, the *Shaw* court noted that interpreting force in § 2241(a)(1) to include threats "flatly contradicts the text," which requires actual *use* of force, and it is "not a solution to

In *Johnson*, the Fourth Circuit held that because an offender may "commit forcible rape without resort[ing] to physical restraint . . . restraint is not an element of the § 2241(a)(1) offense." *Johnson*, 492 F.3d at 258.  In so holding, the court distinguished between § 2241(a)(1)'s "force" element and the guideline § 3A1.3 two-level enhancement for offenses that incorporate "physical restraint" of the victim.  *Id.* at 257–58.  The guidelines define "physical[] restrain[t]" as "forcible restraint of the victim such as being tied, bound, or locked up," whereas "force" under § 2241(a)(1) sweeps more broadly to include the constraint of the victim's movement "without evidence of physical restraint."  *Id.* at 257, 258.

The court provided several examples of non-physical restraint that would still require the use of force, including "inflict[ing] blows upon [a] victim until she submits to a sexual act without restraining her," or the "application of force to open the victim's legs for intercourse," even though "this force would not constrain the victim's movement in the manner contemplated by the physical restraint guideline." *Id.* at 258.  Finally, force "may be satisfied by inference when the offender has disproportionately greater strength than, or coercive power over, the victim."  *Id.*

---

construe the House Report's third definition as applying to Section 2241(a)(2)," as only "certain threats — of death, serious bodily injury, or kidnapping" are included.  *Id.* *Johnson*'s adoption of a definition of force that includes under § 2241(a)(1) "a threat of harm sufficient to coerce or compel submission," *Johnson*, 492 F.3d at 257, may have unnecessarily complicated the analysis and distracted from the more compelling and applicable definition in the House Report that the use of force means physical force. Nevertheless, because *Johnson* is precedential, I must follow it.

It is clear that in this context, the disparity inference is offered only as an example of non-physical restraint — but not necessarily to prove that the disparity inference does not also require the use of physical force. Specifically, it does not follow that "restraint" under the statute does not require the use of physical force, even if the threat of physical force is implied by a disparity. The court in *Johnson* provided two examples of non-physical restraint that still involved the use of force; one indisputably required violent, physical force (beating-up the victim) while the other required seemingly less-violent but nonetheless still physical force (opening the victim's legs). The question still remains how to reconcile the disparity instruction with the definition of force.

I find that *Cammorto*'s definition of force and common sense dictate that the force under § 2241(a)(1) requires physical force but the degree of force may vary as a result of a disparity in size or coercive power. First, *Cammorto* defined force as the use of physical force, *Cammorto*, 859 F.3d at 315 (emphasis added), which clearly encompassed *Johnson*'s more detailed definition of force as "sufficient to overcome, restrain, or injure a person," *Johnson*, 492 F.3d at 257. Second, *Cammorto* recognized that threats of the use of force may satisfy the force element, but "so long as that threat is sufficient to overcome, restrain, or injure a person" — the very same terms it interpreted to mean "physical force." *Cammorto*, 859 F.3d at

315.   Together these cases establish that force under § 2241(a)(1) requires physical force or threats of physical force.

This makes sense given the practical impacts of a disparity.   The fact that a disparity exists between the offender and the victim is relevant only because of the perceived consequences of the victim refusing to submit to the sexual contact.   That an assailant is physically stronger or bigger than the victim implies a threat of force capable of causing physical pain or injury.   For instance, "a threat of harm sufficient to coerce or compel submission may be quite different for a child victim than for an adult victim."   *United States v. Willie*, 253 F.3d 1215, 1220 (10th Cir. 2001).   Simply put: the greater the disparity, the lesser the degree of force.   But force still means physical force.

To further underscore this point, I consider *United States v. Bordeaux*, 997 F.2d 419 (8th Cir. 1993).   In *Bordeaux*, the court upheld the application of a four-point enhancement under the guidelines for § 2241(a) offenses.   *Id.* at 421.   The court reasoned that "[t]he apparent disparity in size between [the defendant] and the victim (200 pounds versus a child . . . ), might be enough, in itself, to establish a restraint."   *Id.*   But it had "no hesitation" finding the size disparity in combination with the defendant's "repeated threats of disclosure to the child's mother" and the child's statement that "she never said no because she knew [the defendant] would punish her for saying no to him," were sufficient to establish "a threat of harm sufficient to

coerce or compel submission." *Id.* at 420–21.  Thus, the inference drawn from a disparity is that the defendant's actions posed an implicit threat of physical harm, and that even vague threats are perceived as explicit threats of harm given the dynamics between the offender and the victim.

In sum, I find that force means violent, physical force.  Thus, I do not accept this ground for invalidating the Count Two sentence.

### 2.  *Kidnapping Under § 2241(a)(2).*

I now consider the defendant's second argument.  Section 2241(a)(2) does not define the term "kidnapping."  The defendant argues that the court should look to the generic definition of kidnapping, which the Fourth Circuit defined in *United States v. Flores-Granados*, 783 F.3d 487 (4th Cir. 2015) to include "deception" and "without the consent of a parent or guardian" if the victim is a child.  *Id.* at 493.  The defendant argues in the alternative that kidnapping invokes the federal kidnapping statute under § 1201(a).  Under either definition, the completion of the crime does not require the use of force.  Indeed, the government concedes as much.

In response, the government argues that terms should be interpreted as they are used throughout the statutory text, specifically the term "kidnapping" is informed by its use in the federal kidnapping statute.  The statute lists alternative means of violating the statute: "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for random or reward" another person.

18 U.S.C. § 1201(a).  The government maintains that to give full effect to the terms "decoy" and "inveigle" so that no part of the statute will be superfluous, the term "kidnap" must not include those actions.  Accordingly, the term "kidnap" requires the use of force.  The government suggests this point is further supported by the common law definition, which requires the use of force.  Finally, because the statute criminalizes threats of kidnapping, it would be inconsistent to interpret kidnapping to include inveigle or decoy, which require that the victim be unaware of the deception, as any threat would immediately expose the deception.

I agree, but not for all the reasons offered by the government.  As an initial matter, I do not agree with the government's argument that the threat of kidnapping by deception is inherently illogical under the statute.  While it may not make sense to threaten the victim in this way, the statute criminalizes threats that any person will be subjected to kidnapping.  For example, the offender could threaten a victim that he will kidnap another person, such as a family member, unless they engage in the sexual act.  Such conduct would still be unlawful under the statute.

As to the remaining arguments, the government is correct that terms that appear in several places throughout the federal code should generally be read in the same way, and that statutes should not be interpreted in a way that renders other terms or provisions superfluous.  But such generalities hardly answer the question presented here.  For starters, "kidnapping" appears in various places through the

- 25 -

federal code and the guidelines, but the term is used in different ways; in some places, it is listed as an enumerated crime-of-violence offense, whereas in others, as here, it appears to describe factual circumstances.  Second, it does not logically follow that because "kidnaps" appears alongside "inveiglement" or "decoy" in the federal kidnapping statute, it necessarily requires the use of force.  After all, the defendant argues that kidnapping may also be proved by mere non-consent.  I therefore must look elsewhere for guidance to resolve this issue.

It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." *Etienne v. Lynch*, 813 F.3d 135, 143 (4th Cir. 2015) (quoting *United States v. Shabani*, 513 U.S. 10, 13 (1994)).  Courts have declined to follow the common law definition "when that meaning is obsolete or inconsistent with the statute's purpose." *Taylor v. United States*, 495 U.S. 575, 594 (1990).  I do not find any contrary indication in the text that would rebut the common-law presumption.

"Kidnap" is defined at common law to mean "to take and carry a person by force and against his will." *United States v. Young*, 512 F.2d 321, 323 (4th Cir. 1975).  So defined, kidnapping would require the use of strong physical force.  The defendant's competing definition, by contrast, would conflict with the "usual rule of statutory interpretation that a law's terms are best understood by 'the company they keep.'" *United States v. Taylor*, 142 S. Ct. 2015, 2023 (2022) (quoting *Gustafson v.*

- 26 -

*Alloyd Co.*, 513 U.S. 561, 575 (1995)); *United States v. Williams*, 553 U.S. 285, 294 (2008) (interpreting terms based on the "neighboring words with which it is associated"). It is reasonable to read the statute's string of operative words — death, severe bodily injury, and kidnapping — as requiring threats of a serious, physical nature. While kidnapping is certainly susceptible to include conduct that does not require physical force, its meaning is narrowed by its association in the statute with "death" and "severe bodily injury." Surely it would not be Congress's intent to group such conduct with mere deceit or non-consent of a parent, as suggested by the defendant; such a definition would vastly expand the statute's reach by sweeping in less severe types of threats.

This interpretation is also consistent with the statute's other provisions. Congress separated out aggravated sexual abuse from non-aggravated sexual abuse by providing more severe punishment under the former for only certain types of more serious threats: death, severe bodily injury, and kidnapping. *Shaw*, 891 F.3d at 448. Specifically, non-aggravated abuse prohibits knowingly "caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear *(other than by* threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)." 18 U.S.C. § 2242(1) (emphasis added). When read together, these two provisions "demonstrate Congress's graded approach to criminalizing sexual assault." *Shaw*, 891 F.3d at 448.

Accordingly, I find that kidnapping under § 2241(a)(2) requires the use of physical force. In so holding, I decline to adopt the defendant's proposed use of the generic offense definition of kidnapping. For support, the defendant relies heavily on *Flores-Granados*. There, the court considered whether a prior state conviction qualified as a crime of violence for purposes of calculating an enhancement under the Guidelines. *Flores-Granados*, 783 F.3d at 490. That specific provision included an enumerated list of qualifying crime-of-violence offenses, including kidnapping. *Id.* Applying the categorical approach, the court then compared the generic definition of kidnapping with the state statute of conviction to determine whether that statute sweeps more broadly. *Id.* at 491. The court explained that "with regard to prior crimes enumerated in a sentencing enhancement statute, Congress intended to refer to 'the generic, contemporary meaning' of the crime . . . [which] can be divined from 'the generic sense in which the term is now used in the criminal codes of most States.'" *Id.* at 490 (quoting *Taylor*, 495 U.S. at 598).

In *Taylor*, the Supreme Court declined to adopt the common-law definition of burglary for purposes of a sentence enhancement under the Armed Career Criminal Act (ACCA). 495 U.S. at 592, 594–95. Specifically, the Court considered the number of states whose crimes would fall outside of the common-law definition given the broader scope of modern state burglary statutes and found that adopting the common-law definition would effectively nullify, if not significantly limit, the

ACCA's effect. *Id.* at 593–94. Such concerns are not present in this case because, as explained above, following the narrower common-law definition will more closely adhere to the purposes of the statute.

Finally, I find that kidnapping does not mean the federal kidnapping statute. Congress could easily have identified § 1201(a) as a predicate in the statutory text but choose to use the term kidnapping instead. In any event, the statute also does not list enumerated offenses; rather, it prescribes threats with certain results (death, serious bodily injury, and kidnapping). *Walker*'s holding that federal kidnapping is not a crime of violence is therefore not controlling. 934 F.3d at 379.

Accordingly, I reject this ground for vacating the sentence under Count Two.

### 3. *Attempted Aggravated Sexual Abuse Under § 2241(a).*

The defendant finally argues that attempted aggravated sexual abuse does not require the use, attempted use, or threatened use of force as an element of the offense. He analogizes attempts liability under § 2241(a) to conspiracy offenses as well as other attempted criminal offenses. Specifically, it is argued that there are steps in furtherance of a conspiracy — such as mere agreement — that do not involve force. Likewise, the defendant suggests that a person could commit attempted aggravated sexual abuse by identifying a potential victim, possessing certain materials to be used to commit the crime, or any other non-violent acts that would still be a substantial step towards completion of the crime. The government's response is only

that the statutory crime of violence includes the attempted use of force.  For the reasons below, I agree with the defendant and will vacate Count Two.

Attempts liability requires: (1) culpable intent to commit a criminal offense; and (2) conduct amounting to a substantial step towards the offense.  *United States v. Engle*, 676 F.3d 405, 419–20 (4th Cir. 2012).  In a recent decision, the Supreme Court considered whether attempted Hobbs Act robbery is a crime of violence under § 924(c).  *Taylor*, 142 S. Ct. at 2018.  There, the Court concluded that it is not.  *Id.* at 2021.  In so holding, the Court reasoned that to win the case, "the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object."  *Id.* at 2020.  However, the Court emphasized that "an intention is just that, no more.  And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property."  *Id*.

The Court then provided a hypothetical to illustrate this point.  Suppose that an individual identifies a store that he intends to rob on a specific date; he researches the "security measures, layout, and the time of day when its cash registers are at their fullest"; he "plots his escape route, and recruits his brother to drive the getaway car"; and finally, he drafts a note to provide to the cashier, stating "[y]our money or your life," which is a bluff but when combined with a firearm is likely to "elicit a compliant response."  *Id.* at 2021.  But on the day in question, the individual is

apprehended by the police before he can complete the robbery. *Id.* The Court concluded that "[t]here is little question the government could win a lawful conviction" for attempted robbery — and yet, the individual never used, threatened, or even attempted to use physical force. *Id.*

The same reasoning applied in *Taylor* resolves this case. The government must prove the same elements for attempted aggravated sexual abuse. Whatever may be said about the completed offense, *attempted* aggravated sexual abuse does not satisfy the force clause. To be clear, "[m]ere preparation is insufficient to establish an attempt," but the substantial step requirement could be satisfied without physical force. *United States v. Johnson*, 409 F. App'x 688, 691 (4th Cir. 2011) (unpublished) (citing *United States v. Sutton*, 961 F.2d 476, 478 (4th Cir. 1992)).

*Taylor* also declined to adopt two of the government's arguments that I find are worth mentioning here. First, the Court rejected the government's position that "because completed Hobbs Act robbery qualifies as a crime of violence, it follows that attempted Hobbs Act robbery does too." 142 S. Ct. at 2021. This "syllogism rests on a false premise," the Court reasoned, as the "elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one." *Id.* at 2022. Instead, "[i]t asks whether the defendant *did* commit a crime of violence — and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force." *Id.* Here, the

government appears to make a similar argument — that attempted aggravated sexual abuse constitutes a crime of violence merely because the definition of crime of violence includes attempts — that I will reject for these same reasons.

## III.

The government requests that the court order a resentencing hearing. "A district court has broad discretion in crafting relief on a § 2255 claim." *United States v. Chaney*, 911 F.3d 222, 225 (4th Cir. 2018). Under the sentencing-package doctrine, where the court of appeals vacates a count of conviction or sentence and remands the case, "the sentence becomes void in its entirety" and the court "is free to revisit any rulings it made at the initial sentencing." *United States v. Ventura*, 864 F.3d 302, 309 (4th Cir. 2017). For instance, the district court could "increase the sentence on a specific count where the original sentence was imposed as part of a package that included a mandatory consecutive sentence which was subsequently found to be invalid." *United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir. 1996). The Fourth Circuit has recognized a distinction in application of the sentencing-package theory where the appellate court vacates the original sentence and remands the case verses where the district court strikes a § 924(c) mandatory sentence and reenters the remaining sentence. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). Under the latter, it is not mandated that the court hold a formal

resentencing, but the court has "broad and flexible power" to determine the appropriate remedial proceedings. *Id.*

Here, the defendant was sentenced to 295 months' imprisonment, consisting of 235 months on each of Counts One and Two, to be served concurrently, and the mandatory minimum of 60 months on Count Three, to be served consecutively. For the reasons previously stated, Count Three must be vacated and with it the 60-month minimum sentence. The advisory guideline range for Count One was 292 to 365 months' imprisonment, without the downward variance granted by Judge Conrad, which is closer to the actual sentence imposed, suggesting it was fashioned with the mandatory consecutive minimum in mind. I therefore find that it is appropriate to hold a hearing to determine whether a different sentence on Count One is warranted.

IV.

For these reasons, it is **ORDERED** as followed:

1. The defendant's Motion to Vacate, Set Aside, or Modify Sentence under 28 U.S.C. § 2255, as amended, ECF Nos. 100 and 101, is GRANTED IN PART and DENIED IN PART. The defendant's sentences under Counts Two and Three are VACATED. The Motion to Vacate is denied as to the sentence under Count One;

2. The Clerk shall schedule a resentencing hearing on the remaining Count One;

3. The motions to remove the case from abeyance, ECF Nos. 128, 130, are

GRANTED;

4. The motion for a hearing, ECF No. 122, is DENIED as moot; and

5. The defendant's pro se motion to dismiss his present counsel, ECF No.

131, is taken under advisement.

ENTER:   May 4, 2023

/s/  JAMES P. JONES
Senior United States District Judge